[Cite as *State v. Dellifield*, 2018-Ohio-4919.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO. 6-18-06

     v.

DENNIS L. DELLIFIELD,               O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20172108 CRI

**Judgment Affirmed**

**Date of Decision: December 10, 2018**

APPEARANCES:

     *Michael A. Rumer and Zachary D. Maisch* **for Appellant**

     *Jason M. Miller* **for Appellee**

**SHAW, J.**

**{¶1}** Defendant-appellant, Dennis L. Dellifield ("Dellifield"), brings this appeal from the April 24, 2018, judgment of the Hardin County Common Pleas Court sentencing Dellifield to 5 years of community control, with 90 days local incarceration, after he was convicted in a bench trial of two counts of Attempted Illegal Use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2923.02(A) and R.C. 2907.323(A)(1), both third degree felonies, and two counts of Attempted Illegal Use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2923.02(A) and R.C. 2907.323(A)(3), both first degree misdemeanors. On appeal, Dellifield argues that the State failed to establish that Hardin County was the proper venue; that the trial court erred by denying Dellifield's motion to dismiss on the basis that the indictment was an unconstitutional denial of his First Amendment rights; that the State failed to prove beyond a reasonable doubt that Dellifield performed a substantial step sufficient to establish the predicate crime alleged; that the trial court erred when it admitted a specific exhibit into evidence; and that the trial court erred when it ruled that Dellifield's subsequent actions did not constitute an abandonment of his wrongful act.

Case No. 6-18-06

*Relevant Facts and Procedural History*

**{¶2}** Dellifield was a teacher for over 40 years at Allen East. He was also the school's band director. He retired from his position prior to the incidents leading to this case.

**{¶3}** "John Doe,"[1] the victim in this matter, was born in December of 2000. While Dellifield was still a teacher, John Doe was a member of the band.[2] After Dellifield retired, he maintained contact with John Doe, sending frequent text messages. Dellifield also indicated that he and John Doe occasionally met for a meal to talk about life.

**{¶4}** On February 12, 2017, at 4:33 p.m., Dellifield sent a text message to John Doe, then 16 years old, reading as follows.

> **I hope u r home. I read an interesting article & in this article we r 2 challenge someone who we trust & luv w/ an amazing challenge & if accepted I will email u w/ the rhyme & reason behind it. Once sent it will b deleted promptly. . .ready? Send me a picture of ur erection from the base 2 the tip! Accept? Go 4 it I am preparing ur email as this is being sent! D-**

(State's Ex. 13).

**{¶5}** Dellifield sent a second text message at 4:48 p.m. on the same date, reading nearly the same, although there were a few added words at the end.

> **I hope u r home. I read an interesting article & in this article we r 2 challenge someone who we trust & luv w/ an amazing**

---

[1] Although John Doe is commonly used as a stand-in for an unknown individual, this juvenile is known. However, in lieu of using the juvenile's initials the parties use the name "John Doe," so we will as well.
[2] John Doe's mother had actually been in Dellifield's band as well when she was in school.

-3-

**challenge & if accepted I will email u w/ the rhyme & reason behind it. Once sent it will b deleted promptly. . .ready? Send me a picture of ur erection from the base 2 the tip! Accept? Go 4 it I am preparing ur email as this is being sent! D- ck email 4 explanation! D- ck email 4 explanation! D-[3]**

(*Id.*) John Doe did not respond to either of the two messages.

**{¶6}** The next day, Dellifield sent John Doe another message that reads as follows.

**A friend is what the heart needs 24/7. Thank u 4 being that very special friend 2 me. We DO need each other! Have a great Mon – b safe out there & know how much I miss u & luv u oh so much my fav one! D-/I apologize 2 u 4 the challenge yesterday! Please 4 give me if u can & if u can't or won't I understand that as well. Again so sorry 4 sharing this tasteless article w/ u!**

(*Id.*)

**{¶7}** John Doe did respond to this message, stating, "It's okay, I still love you have a great day." (*Id.*) Dellifield replied,

**No its [sic] not I took advantage bcause [sic] of this silly ass article. I feel that I have lost ur respect 4 me. How can I ever make this dumd-ass [sic] idea up 2 u. I just luv u so much & I don't want 2 lose u! Luv u my fav! D-**

(*Id.*)

---

[3] We should note that the "style" of writing in these messages is consistent with other texts that Dellifield sent to John Doe. For example, Dellifield sent "Enjoy ur day off! Thinking about u 2-day & hopefully c u soon! B safe on the roads & use ur head! Luv & appreciate U so much my fav one I just want u 2 b safe! D-." (State's Ex. 13). Another one read, "Wherever u go 2-day go w/ all of ur heart! B safe 2 day & everyday out there. I truly hope u know how much I miss c-ing U & how much I luv u my fav one! Luv U [John Doe]! D-." Another reads, "A wk-end thought: How great is it 2 have a friend like u who luves [sic] me as much as I LUV U! D-." (*Id.*) These text messages were sent to John Doe on different dates in January and February of 2017. Dellifield signed all of his text messages as "D-".

{¶8} John Doe informed his friend about the text messages he received from Dellifield, and then later his parents. His parents went to the police, and an investigation ensued. Based on the messages, authorities obtained a search warrant for Dellifield's residence in Ada, Ohio. Dellifield had a shed, which he used like an office or "studio," containing a computer. The computer was seized and searched.

{¶9} Several searches on Dellifield's Google Chrome browser in his computer revealed search terms specifying John Doe, such as: "[John Doe] & [another named male individual] teenage oral sex" and "[John Doe] & [the same, other named male individual] teenage masturbation." There were other Google search terms such as "how to have a sexual fair [sic] with a 16 year old teenager" and "how to have a sexual affair with a teenage boy" and "male oral sex with 16 year old boys." (State's Ex. 5). In addition, Dellifield had searched for John Doe on Facebook, and had printed pictures of John Doe from the social media platform.

{¶10} Dellifield was not present initially when the search of his residence was conducted, but he returned home while it was ongoing and he agreed to speak with an officer at the police station. At the beginning of the interview, the officer indicated that the department had received information that Dellifield had sent inappropriate message requests to a minor. Dellifield readily named John Doe before that name was provided by the police to him in the interview.

**{¶11}** Dellifield stated in the interview that he was close with John Doe and that they saw each other roughly once per month to go out to eat. Dellifield indicated that John Doe told him that he had problems at home, and that John Doe would reveal his sexual exploits to him. Dellifield stated that he was looking after John Doe, and that he did not want John Doe to get a girl pregnant, so he requested that John Doe send him a picture of his penis to get fitted for a condom.[4] Dellifield also claimed that he was researching a book on "Leadership for Teenagers," which covered teenage oral sex and teenage masturbation. When his computer was searched, no notes for any such book were located.

**{¶12}** On July 26, 2017, Dellifield was indicted for Attempted Pandering Obscenity Involving a Minor in violation of R.C. 2923.02(A) and R.C. 2907.321(A)(1), a felony of the third degree (Count 1), Attempted Pandering Obscenity Involving a Minor in violation of R.C. 2923.02(A) and R.C. 2907.321(A)(5), a felony of the fifth degree (Count 2), Attempted Illegal Use of a Minor in Nudity-Oriented Material in violation of R.C. 2923.02(A) and R.C. 2907.323(A)(1), a felony of the third degree (Count 3), Attempted Illegal Use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2923.02(A) and R.C. 2907.323(A)(3), a misdemeanor of the first degree (Count 4), Attempted Pandering Obscenity Involving a Minor in violation of R.C. 2923.02(A) and R.C.

---

[4] The police pressed Dellifield on this excuse, and Dellifield stated that his cousin had fitted him for a condom when he was younger.

2907.321(A)(1), a felony of the third degree (Count 5), Attempted Pandering Obscenity Involving a Minor in violation of R.C. 2923.02(A) and 2907.321(A)(5), a felony of the fifth degree (Count 6), Attempted Illegal Use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2923.02(A) and R.C. 2907.323(A)(1), a felony of the third degree (Count 7), and Attempted Illegal Use of Minor in Nudity-Oriented Material or Performance in violation of R.C. 2923.02(A) and R.C. 2907.323(A)(3), a misdemeanor of the first degree (Count 8). Dellifield pled not guilty to the charges.

{¶13} The bill of particulars alleged that Counts 1-4 of the indictment concerned the first text message request that Dellifield sent to John Doe on February 12, 2017, at 4:33 p.m., and Counts 5 through 8 concerned the second text message request sent on the same date at 4:48 p.m.[5] The bill of particulars also alleged that near the times when Dellifield was texting John Doe, he was on his computer viewing websites of naked men performing acts of sexual activity including oral sex and masturbation with other males, placing him at his Ada home when he sent the messages.

{¶14} On October 16, 2017, Dellifield filed a motion to dismiss the indictment arguing that the indictment violated his First Amendment rights and that it was an effort to regulate "pure speech" by combining a charge of "Criminal

---

[5] There is no indication in the record that any contemporaneous email was sent to John Doe despite references to the same in the two texts on or about February 12, 2017.

-7-

Attempt" with a separate crime to create a charge that infringed on the basic liberty of free speech and thought. In addition, he argued that "as applied" the statutes were an unconstitutional restriction of his First Amendment rights. He also argued that his text messages on February 13, 2017, indicated abandonment of the requests/attempts sent on February 12, 2017.

{¶15} On November 9, 2017, the State filed a response, arguing that the statutes at issue were not unconstitutional and Dellifield was not exercising "pure speech" by texting the victim to request a very specific picture of a sex organ in these instances.

{¶16} A hearing was held on the motion to dismiss on November 14, 2017, wherein the trial court took testimony and heard arguments. On December 11, 2017, the trial court filed an entry denying Dellifield's motion to dismiss. The trial court cited the United States Supreme Court case of *United States v. Williams*, 553 U.S. 285, 299, 128 S.Ct. 1830, 1842 (2008), for the proposition that "offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment protection." The trial court noted that it did not appear to be contested that if the juvenile John Doe had provided the picture as requested that charges under R.C. 2907.321 and R.C. 2907.323 could be appropriate. The trial court found that neither the Pandering statute in R.C. 2907.321 nor the Illegal Use statute in R.C. 2907.323 set forth an "Attempt" crime, but neither statute proscribed merely a

"thought" crime as suggested by Dellifield; rather, action was required. The trial court indicated that Dellifield's argument that he did not take a substantial step toward conduct because he was merely exercising "pure speech," was distinguishable from these instances where he actually made an "outright request for a picture." (Doc. No. 34).

{¶17} The trial court also found that the statutes at issue were not overbroad or vague. Further, for Dellifield's "as applied" constitutional challenge, the trial court found that Dellifield did not establish his burden that any of the statutes had a constitutional defect.

{¶18} Following the denial of his motion to dismiss the indictment, Dellifield waived his right to a jury trial and proceeded to a bench trial on January 23-24, 2018. At trial, the State presented the testimony of the officer who interviewed Dellifield, John Doe, the parents of John Doe, the officers who searched Dellifield's residence, the detective who conducted a forensic examination of Dellifield's cell phone and his computer, and another individual who was a former student of Dellifield's who testified that Dellifield had once requested a picture of his penis. That individual, who was 18 years old at the time of the request, indicated that he did send a picture to Dellifield.[6] In addition to the testimony of these individuals, the State introduced the text messages between Dellifield and John Doe into

---

[6] He claimed at trial that it was just a picture he took off the internet rather than a picture of himself.

evidence, as well as the results of the search of Dellifield's cell phone and computer. Pictures that Dellifield had printed of John Doe, which were in his "studio," were also introduced into evidence.

**{¶19}** The trial court took the matter under advisement and indicated it would issue a written decision. On February 27, 2018, trial court announced its decision, finding Dellifield not guilty of the Attempted Pandering Obscenity Involving a Minor charges in Counts 1, 2, 5, and 6 of the indictment.[7] However, the trial court found that Dellifield was guilty of Attempted Illegal Use of a Minor in Nudity-Oriented Material or Performance as charged in Counts 3, 4, 7 and 8, of the indictment.[8] The trial court reasoned that Dellifield had attempted to create, direct, produce, or possess a photograph of a minor in a state of nudity, such that he was guilty of those crimes.

**{¶20}** On April 19, 2018, Dellifield's case proceeded to sentencing. The trial court sentenced Dellifield to 5 years of community control, with 90 days local incarceration, on each count, all served concurrently to each other. A judgment entry memorializing Dellifield's sentence was filed April 24, 2018. It is from this

---

[7] The trial court reasoned that the Pandering Obscenity Involving a Minor statute under R.C. 2907.321 required Dellifield to create, reproduce, publish, or direct an "obscene" performance or "obscene" material. The trial court examined case authority and determined that for the material to be "obscene" it had to depict "sexual conduct." The trial court found that a "nude sex organ" alone did not constitute "sexual *conduct*," thus Dellifield was acquitted of the Pandering charges.

[8] Counts 3 and 7 were felonies of the third degree and Counts 4 and 8 were misdemeanors of the first degree.

judgment that Dellifield appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred when it determined the State had proved beyond a reasonable doubt that the alleged crimes set forth in the indictment occurred in Hardin County, Ohio and therefore venue was established.**

**Assignment of Error No. 2**
**The trial court erred when it denied defendant/appellant's motion to dismiss on the basis that the indictment was a denial of defendant/appellant's First Amendment rights under the U.S. Constitution for the exercise of free speech.**

**Assignment of Error No. 3**
**The trial court erred when it determined the State had proven beyond a reasonable doubt that the defendant/appellant performed a substantial step sufficient to establish the predicate crime alleged in each Count of the indictment.**

**Assignment of Error No. 4**
**The trial court erred when it admitted into evidence State's Exhibit 7 without any evidence as to the content thereof.**

**Assignment of Error No. 5**
**The trial court erred when it ruled that the evidence in the case, specifically the text of February 13, 2017, did not constitute an abandonment of a wrongful act by the defendant-appellant.**

*First Assignment of Error*

{¶21} In Dellifield's first assignment of error, he argues that the State failed to establish beyond a reasonable doubt that Hardin County was the proper venue for this case.

Standard of Review

**{¶22}** In a criminal case, venue is not a material element, but the State must still prove venue beyond a reasonable doubt. *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). "Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli*, 88 Ohio St.3d 43, 45 (2000). Venue need not be proven in express terms. *Id.* Rather, it can be established by all of the facts and circumstances viewed in the light most favorable to the State. *Id.* In addition, it has been stated that a trial court has broad discretion to determine the facts which would establish venue. *See*, *e.g.*, *State v. Mills,* 6th Dist. Williams No. WM–09–014, 2010–Ohio–4705, ¶ 22; *State v. McVety*, 3d Dist. Logan No. 8-16-19, 2017-Ohio-2796, ¶ 10

Analysis

**{¶23}** In this case, Dellifield argued to the trial court that the State failed to establish venue in this matter beyond a reasonable doubt, and he renews his argument on appeal. The trial court specifically addressed venue in its written decision memorandum, reasoning as follows.

> **The evidence before the Court has convinced the Court beyond a reasonable doubt that the conduct with which Defendant Dellifield is charged occurred in Hardin County, Ohio. Defendant's first text message stated at 4:33 p.m. "I am preparing ur (sic) email as this is being sent." This same statement was made in the second text message sent 15 minutes later, at 4:48. The only evidence before the Court is that Defendant's computer was located, hooked up to his printer, at 415 Willeke, Ada, Ohio. Defendant insisted in his video statement that all his "research" for his alleged book was in his studio at 415 Willeke. Also, there**

> **is strong evidence that Defendant was at his computer at the time he was sending his text, because he said he was preparing an e-mail as he sent the text.**
>
> **Further, State[']s Exhibit 5 is compelling that Defendant was at his computer, looking at pornographic web sites on the same date at approximately the same time as when he sent the texts. Defendant had visited one site 23 times, with the last time at 4:57 on the date of the text, and visited another 18 times with the last time at 4:57. Others followed at 4:59, 5:02, 5:03, 5:09 and 5:10.**
>
> **The Court is therefore satisfied, beyond a reasonable doubt that venue in Hardin County, Ohio has been proved.**

(Doc. No. 55).

{¶24} We agree with the trial court. As noted earlier, there is no evidence in the record that any contemporaneous email was sent to John Doe despite references to the same in the two texts on or about February 12, 2017. However, the text messages sent by Dellifield indicated that he was contemporaneously preparing an email, circumstantially indicating that Dellifield was at his computer. This was then further corroborated by the fact that shortly after the second text message was sent, Dellifield's computer was accessing male pornographic websites.

{¶25} Dellifield may contend that the evidence establishing venue in this case is scant, but the only evidence in the record points to Dellifield being at his Hardin County home when he sent the text messages. Pursuant to R.C. 2901.12(I)(1), venue is proper "in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense." Sending the text

messages from his Hardin County home, or near his home, would certainly satisfy this statute.

{¶26} Moreover, Dellifield never even denied sending the text messages or argued that he was elsewhere at the time. Based on the only evidence in the record, when looking at this matter in a light most favorable to the State, we cannot find that the trial court erred. Therefore, Dellifield's first assignment of error is overruled.

*Second Assignment of Error*

{¶27} In Dellifield's second assignment of error, he argues that the trial court erred in denying his motion to dismiss the indictment on the basis that the indictment was an unconstitutional denial of his First Amendment right to exercise free speech. He argues that the charges of Attempted Illegal Use of a Minor in Nudity Oriented Material or Performance were facially unconstitutional, overbroad, vague, and that they were unconstitutional as applied against him.

Standard of Review

{¶28} As an initial matter, it must be noted that statutes enacted in Ohio are presumed to be constitutional. *See State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas*, 9 Ohio St.2d 159, 161–162, (1967). This presumption of constitutionality remains unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional. *State v. Williams*, 88 Ohio St.3d 513, 2000-

Ohio-428, 728 N.E.2d 342 (2000) citing *Roosevelt Properties Co. v. Kinney*, 12 Ohio St.3d 7, 13 (1984).

{¶29} An exception to the general rule of presumed constitutionality is recognized for laws so broadly written that they "may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Members of Los Angeles City Council v. Taxpayers for Vincent,* 466 U.S. 789, 798, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). This exception is known as the overbreadth doctrine. For a statute to be facially invalid on overbreadth grounds, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court[.]" *Id.* at 801, 104 S.Ct. 2118.

{¶30} "A clear and precise enactment may * * * be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. Rockford* , 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In considering an overbreadth challenge, the court must decide "whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Id.* at 115, 92 S.Ct. at 2302, 33 L.Ed.2d at 231. A statute will be invalidated as overbroad only when its overbreadth has been shown by the defendant to be substantial. *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). We recognize that in construing legislative enactments,

courts are bound to interpret them in such a way that they are constitutional, if it is reasonably possible to do so. *State ex rel. Jackman*, *supra*.

Facial Challenge to R.C. 2907.323(A)(1)/(A)(3)

{¶31} On appeal, Dellifield argues that the charges against him under R.C. 2907.323(A)(1) and R.C. 2907.323(A)(3) were an unconstitutional restriction of his First Amendment right to free speech. He first argues that the "Illegal Use of a Minor in Nudity-Oriented Material" statute is facially invalid. The statute at issue, reads, in relevant part, as follows.

**(A)  No person shall do any of the following:**

**(1)   Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity[.] * * ***

**\* \* \***

**(3)   Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity[.][9] \* \* \***

R.C. 2907.323(A)(1)/(3).[10]

{¶32} In addressing this facial constitutional challenge in its decision on the motion to dismiss, the trial court reasoned as follows.

---

[9] Both of these subsections contain exceptions that require, *inter alia*, parental consent.

[10] For reference, Attempt pursuant to R.C. 2923.02(A) reads, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

-16-

> **Defendant proposes that he has a constitutional right to discuss any subject with another person. However this is not an attempt to discuss any matter; it is an outright request for a picture.**
>
> **\* \* \***
>
> **Defendant complains that his right to freedom of speech is being infringed upon. There is no question that both the First Amendment to the United States Constitution and Article I, Section II of the Ohio Constitution both provide certain protections for every citizen's speech. But that protection is not unfettered. The United States Supreme Court in *United States vs. Williams*, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) stated:**
>
> > **1. "offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment" [sic] protection." (at 299)[.]**
>
> **\* \* \***
>
> **In fact, the *Williams* Court had to contend with modern social technology as Defendant Williams had used the Internet to attempt to procure pornographic pictures of children, ruling "Thus, an Internet user who solicits child pornography violates the statute."**

(Doc. No. 34).

{¶33} In our own review of the matter, we note that the trial court relied primarily upon the decision of the Supreme Court of the United States in *United States v. Williams*, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). In that case, the Court determined that requests to obtain "child pornography" were not protected under the First Amendment. The trial court implicitly concluded that the requested picture of a minor's erect penis was sufficient to constitute "child

pornography." We concur with the trial court's conclusion. Given that the photograph requested could be construed as lewd and lascivious, we find no error with the trial court's ruling, which we find to be consistent with the decisions in *Williams*, *supra*, at 293-297, 301, and *State v. Kerrigan*, 2d Dist Greene No. 2005-CA-114, 2006-Ohio-4279, ¶¶ 31, 53 ("graphic focus on genitals" could be considered lewd). Moreover, Black's Law Dictionary indicates that "child pornography" is not protected under the First Amendment even if it "falls short of the legal standard for obscenity."

{¶34} Nevertheless, even assuming *arguendo* that the requested photograph *did not* rise to the definition of "child pornography," the convictions in this case would be constitutional on other grounds because there is a compelling government interest in protecting minors from unlawful solicitation of nude photographs by adults. *See State v. Turner*, 2d Dist. Montgomery No. 19941, 2004-Ohio-464, ¶¶ 33-34; *State v. Snyder*, 155 Ohio App.3d 453, 2003-Ohio-6399; *State v. Martin*, 2d Dist. Montgomery No. 26033, 2014-Ohio-3640, ¶ 20 ("The State has compelling interests in protecting the child and in limiting the availability of depictions of nude children."). Moreover, the statute here is narrowly tailored such as not to have a chilling effect on free speech. In fact, the statute contains exceptions for certain scenarios where proper parental consent was given for use of photographs for medical or scientific purposes.

**{¶35}** In sum, Dellifield has simply not established that the statute is overbroad, where here it is tailored to very specific and limited conduct, and the statute provides certain legal exceptions. As it is Dellifield's burden to demonstrate that the statute at issue is unconstitutional we do not find any compelling arguments that he has met that burden. Similarly, to the extent that Dellifield argues that this statute is vague, he has not met his burden on that issue either, as the statute rather clearly prohibits possession of photographs of naked minors.

"As Applied" Challenge

**{¶36}** Dellifield next contends that the charges "as applied" against him were vague and unconstitutional in the context of an Attempt charge because they do not "set forth the act or omission which constitutes a 'substantial step' planned to result in the illegal use of nudity oriented material." The trial court addressed this issue in denying Dellifield's motion to dismiss, finding that Dellifield failed to meet his burden to establish that there was any flaw in combining the "Attempt" statute under R.C. 2923.02(A) with the "Illegal Use" statute of R.C. 2907.323. We agree.

**{¶37}** Dellifield seems to argue that his text messages sent to John Doe should not constitute a "substantial step" for a "Criminal Attempt" because it was, as he contends, "pure speech." Whether such an action was a substantial step or more specifically, "conduct that, if successful, would constitute or result in the offense," would have been up to the factfinder, and we reject this argument.

Dellifield seems to argue that allowing "Criminal Attempt" to be performed by a written request is dangerous, without providing examples as to how it would be *unconstitutional* in this instance. Regardless, as applied in *this* matter, we cannot find that he has demonstrated that the statutes at issue are unconstitutional. Therefore, Dellifield's second assignment of error is overruled.

*Third Assignment of Error*

**{¶38}** In Dellifield's third assignment of error, he argues that the trial court erred by finding that he had committed a "substantial step" sufficient to establish the predicate crimes alleged in the indictment. Specifically, he argues that "hitting the send button" on his cell phone was not sufficient to constitute a "substantial step."

Standard of Review

**{¶39}** Dellifield seems to be arguing that the State produced insufficient evidence to find that he committed a criminal "Attempt" or that the finding of "Attempt" was against the manifest weight of the evidence. Revised Code 2923.02(A), Ohio's Attempt statute, refers to purposely or knowingly engaging in "conduct that, if successful, would constitute or result in the offense."

**{¶40}** Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency

challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶41} By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

Analysis

{¶42} In this case, Dellifield sent two text messages, fifteen minutes apart, to John Doe requesting pictures of his erect penis, specifically from the base to the tip. John Doe did not respond or send the picture as requested. However, the trial court found that Dellifield's act of sending the requests via text message was a "Criminal Attempt" to commit Illegal Use of a Minor in Nudity-Oriented Material or Performance.

{¶43} Specifically, the trial court reasoned that Dellifield

-21-

**attempt[ed] to cause the minor child to provide the requested photograph; that Defendant guided the minor with specificity (i.e. to be erect, from the base to the tip); and Defendant was a person in a position of apparent authority over the child (being a well-respected adult, former school teacher, who professed love for the child and a concern for the child's best interests).**

(Doc. No. 55). We agree with the trial court.[11]

**{¶44}** Once Dellifield sent his text messages to John Doe, he completed his attempt to produce and procure a photograph of John Doe's erect penis. Had John Doe responded by sending the photograph, Dellifield would then have been in possession of that photograph, and he would have been responsible for directing its creation. As such, we cannot find that the findings of criminal attempts by the trial court are unsupported by the evidence, or that the findings were against the weight of the evidence. *See State v. Andrews*, 1st Dist. Hamilton No. C-060545, 2007-Ohio-2013, ¶ 77 (indicating that attempted importuning was a cognizable crime and that the harm was in the asking).

**{¶45}** Moreover, even as Dellifield argues that he was merely exercising free speech, we have already found there are compelling interests in restricting such speech when directed at minors. Based on the evidence in the record we cannot find

---

[11] The trial court found that there was no question that the requested photo would have involved nudity as defined in R.C. 2907.01(H), which reads as follows. " 'Nudity' means the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering of any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state."

that the trial court erred by finding that Dellifield committed a "Criminal Attempt" of the requisite crimes. Therefore, his third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶46}** In Dellifield's fourth assignment of error, he argues that the trial court abused its discretion by admitting State's Exhibit 7 into evidence over objection without any evidence as to its contents.

Standard of Review

**{¶47}** A trial court is vested with broad discretion in the admission of evidence. *State v. Plotts*, 3d Dist. Van Wert No. 15-10-08, 2011-Ohio-900, ¶ 23, citing *Columbus v. Taylor*, 39 Ohio St.3d 162, 164 (1988). Its evidentiary rulings will not form the basis for a reversal on appeal absent a clear abuse of discretion, which is materially prejudicial to the appellant. *Id*. citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984).

Analysis

**{¶48}** State's Exhibit 7 was a sealed package that was never opened in court, but multiple witnesses testified that the package contained the Dell computer that was seized from Dellifield's home. There was testimony as to how the computer was handled, where it was transferred to, and where it was stored. The defense objected to the admission of State's Exhibit 7 into evidence, even though the contents of the extraction from the computer were separately admitted.

Case No. 6-18-06

**{¶49}** The trial court conducted the following analysis on the matter on the record.

> **I will agree with [defense counsel] that this is a – an extremely unusual – I kept assuming that something was going to happen that didn't happen; however, there is evidence to support [the prosecutor's] contention that moving that as a package containing a black Dell computer is what he's proposing, that has been testified to the last person in the evidence that had access to that computer, that he placed – he identified it by photographs, which have been admitted. He placed it in the package and sealed the package and could identify no tampering with it.**
>
> **The last evidence before the Court that that [sic] exact computer identified in photographs 19, 20, 21, 22, 23, and 24 is in that package. I hope we're never put in the position of having to consider something so unusual again; however, I do believe that the minimal evidence before the Court is that that [sic] particular computer showed in those photographs, which was identified as the – by other witnesses as the computer that was taken from the defendant's shed or studio is in fact the document – are the item in that package.**
>
> **Once again, gentlemen, I don't know what difference it makes. We don't have the phone before us. What difference does it make whether we have the computer[?] The extractions have been admitted into evidence. So I think it is completely non important. But I do believe, again, the very minimal evidence has been put into the record to support that, whether it's of the best nature to do that or not is another thing. But that's – there we are.**
>
> **So the Court will admit – over strong objection will admit evidence seven – Exhibit 7.**

(Tr. at 376-377).

-24-

{¶50} As the trial court stated, there was testimony identifying the package State's Exhibit 7 arrived in and how it came to the court, which could support the trial court's decision. Nevertheless, even if we assumed, without finding, that it was erroneous for the trial court to admit State's Exhibit 7 into evidence, we agree with the trial court that its admission is inconsequential to the outcome of this case. The contents of the computer were separately testified to and the extraction analysis came in a separate report that was introduced into evidence. We fail to see how the inclusion of a sealed computer would have prejudiced Dellifield, given that its evidentiary value was extremely minimal as it was presented in State's Exhibit 7. Therefore, Dellifield's fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶51} In his fifth assignment of error Dellifield argues that the trial court erred when it ruled the text messages on February 13, 2017, did not constitute an abandonment of a wrongful act.

Relevant Authority

{¶52} Criminal Attempt as codified in R.C. 2923.02 has an affirmative defense listed within its statute. It reads as follows.

> **(D) It is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's Criminal purpose.**

R.C. 2923.02. *See also State v. Bowyer,* 8th Dist. No. 88014, 2007–Ohio–719, ¶ 15,

citing *State v. Cooper,* 52 Ohio St.2d 163, 178 (1977) (vacated on other grounds).

However, when an offender forms the intent to perform an act and takes a substantial

step toward the act, he cannot argue he has abandoned the act. *State v. Brewley*,

10th Dist. Franklin No. 11AP-567, 2012-Ohio-2525, ¶ 27.

Analysis

**{¶53}** In this case, Dellifield argues that he established the affirmative

defense of abandonment when he sent the following text message to John Doe the

day after he requested a picture of John Doe's erect penis.

> **A friend is what the heart needs 24/7. Thank u 4 being that very special friend 2 me. We DO need each other! Have a great Mon – b safe out there & know how much I miss u & luv u oh so much my fav one! D-/I apologize 2 u 4 the challenge yesterday! Please 4 give me if u can & if u can't or won't I understand that as well. Again so sorry 4 sharing this tasteless article w/ u!**

(State's Ex. 13).

**{¶54}** Dellifield argued to the trial court that the preceding text message

established abandonment. The trial court disagreed, reasoning as follows.

> **Abandonment means a complete and voluntary renunciation of Defendant's criminal purpose. The text sent by Defendant to the minor on the day after the two texts forming the basis for this case is clearly an apology, and not a renunciation of his request. At no time does he insist that the minor *not* send the photo. Therefore abandonment does not apply herein.**

(Doc. No. 55).

-26-

{¶55} The evidence supports the trial court's determination that Dellifield's subsequent message was an apology but not an abandonment. Dellifield's message on the next day did not request that John Doe refrain from sending a picture, he merely apologized for his action. Moreover, Dellifield completed his substantial step toward the crime by soliciting the very specific picture and sending it directly to John Doe. For these reasons we cannot find that the trial court erred on this issue. Therefore Dellifield's fifth assignment of error is overruled.

*Conclusion*

{¶56} For the foregoing reasons Dellifield's assignments of error are overruled and the judgment of the Hardin County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**